IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GABY ARANDA**, *et al.*,

**Plaintiffs,**

v.

**WALGREEN CO.**, d/b/a Walgreens, *et al.*,

**Defendants.**                                              No. 12-cv-337-DRH

**ORDER**

**HERNDON, Chief Judge:**

This is the second time this case has been removed to federal court based upon diversity jurisdiction. The first time it was removed, Judge Gilbert remanded this case back to the St. Clair County circuit court on the basis that complete diversity was lacking because the case contained both New Jersey plaintiffs, i.e., Anthony Marone and Roger Coron, and defendants, i.e., Hoffmann-La Roche Inc. and Roche-Laboratories Inc. See Doc. 17, 11-cv-00654-JPG-DGW. That impediment to the Court's jurisdiction is no longer here as plaintiffs have voluntarily dismissed Marone's causes of action and have shown that Coron was a citizen of New York, not New Jersey. Rather, this time around, the Court must decide whether defendant

Walgreen Co., d/b/a Walgreens, an Illinois citizen (there are four plaintiffs who are alleged to be Illinois citizens[1]), prohibits this Court from having jurisdiction over this matter. Based upon the Seventh Circuit's decision in *Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011), the Court finds that the state of plaintiffs' complaint at the time of removal clearly fails to allege what is necessary against the pharmaceutical retailer and so the claims against Walgreens must be dismissed, thereby removing any barrier to the Court's jurisdiction. Thus, plaintiffs motion to remand (Doc. 9) is denied.

## I. Background

On June 24, 2011, numerous (seventy-one) plaintiffs filed suit against defendants Wagreens, Hoffmann-La Roche Inc., Roche Laboratories Inc., F. Hoffmann-La Roche Ltd., and Roche Holding Ltd. for personal injuries they suffered after being exposed to the pharmaceutical drug Accutane, which is alleged to have been manufactured by defendants Hoffmann-La Roche Inc. and Roche Laboratories, Inc., and sold by defendant Walgreens. On July 29, 2011, defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. (collectively the answering defendants or defendants) filed a notice of removal (Doc. 3), removing the case from St. Clair County circuit court to this Court on the basis of diversity jurisdiction. Doc. 3, 11-cv-654-JPG-DGW. In the notice of removal, defendants alleged that plaintiffs' complaint fraudulently joined defendant Walgreens and fraudulently brought claims on behalf

---

[1] Those four plaintiffs are: Lindsey Burnham, Sean Landgraf, Viola Lemon, and Ralph Lemon.

of two New Jersey citizens in order to defeat diversity jurisdiction. Thus, defendants argued that because of the fraudulent joinder and misjoinder of non-resident plaintiffs, the Court had jurisdiction. On August 25, 2011, the Court, via Judge Gilbert, issue a memorandum and order, remanding this case to state court on the basis that there were New Jersey plaintiffs and defendants. See Doc. 17, 11-cv-654-JPG-DGW. At the time Judge Gilbert issued his remand order, the case was pending transfer for consolidated multidistrict proceedings in *In re Accutane Products Liability Litigation*, MDL No. 1626.

On April 27, 2012, defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. filed another notice of removal (Doc. 2)[2] in this Court, noting that since the case was remanded to state court, plaintiffs have dropped the claims of the New Jersey citizen Marone, and that the deposition testimony of plaintiff Coron established that he was a resident of New York,[3] thereby nullifying the district court's

---

[2] It is undisputed that defendants filed their notice of removal pursuant to 28 U.S.C. § 1446(b)(3), after discovering through Coron's deposition that he was in fact a citizen of New York and not New Jersey. See 28 U.S.C. § 1446(b)(3) ("[A] notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

[3] Despite defendants alleging residency and not citizenship in the notice of removal, the Court finds that Coron's deposition testimony, the fact that plaintiffs do not dispute that Coron is a citizen of New York, and the fact that defendants argue that Coron is a citizen of New York in their response to plaintiffs' motion to remand, sufficiently establish Coron's citizenship. See *Chi. Stadium Corp. v. Ind.*, 220 F.2d 797, 798-99 (7th Cir. 1955) (noting that factual allegations of citizenship must be made in the pleadings, demonstrating complete diversity);

prior basis for finding complete diversity lacking. Defendants still contend that defendant Walgreens was fraudulently joined. That same day, defendants filed a notice of potential tag-along with the United States Judicial Panel on Multidistrict Litigation (the Panel), and on May 2, 2012, the Panel issued a Conditional Transfer Order (CTO). On May 7, 2012, plaintiffs filed with the Panel their opposition to the CTO and moved to vacate the CTO because the federal court lacked subject matter jurisdiction. Defendants responses are due May 29, 2012.

On May 9, 2012, plaintiffs filed a motion to remand (Doc. 9), a memorandum in support thereof (Doc. 10), and a motion to expedite briefing (Doc. 11) so that plaintiff's motion to remand would be ripe for decision prior to the Panel's May 29, 2012, briefing deadline related to the CTO. On May 11, 2012, the Court granted plaintiffs motion to expedite briefing (Doc. 14), and ordered defendants to file their responses by May 18, 2012. On May 18, 2012, defendants filed their response (Doc. 14), and May 21, 2012, plaintiffs filed a reply to that response (Doc. 15). For the reasons that follow, the Court denies plaintiffs' motion to remand (Doc. 9).

## II. Analysis

In plaintiffs' motion to remand, plaintiffs contend that this case should be remanded back to state court for lack of subject matter jurisdiction "because (1) complete diversity of citizenship is lacking because four [p]laintiffs and [d]efendant

---

*Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000) ("[A]llegations of residence are insufficient to establish diversity jurisdiction.") (citing *Guaranty Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996) ("When parties allege residence but not citizenship, the court must dismiss the suit.")).

Walgreens are citizens of Illinois and (2) [p]laintiffs' claims against Walgreens are recognized as meritorious under prevailing Illinois law, and therefore, Walgreens was not fraudulently joined in this action."[4] Defendants contend, on the other hand, that Walgreens has been fraudulently joined, and that plaintiffs' tactic of naming a non-diverse pharmacy in a failure to warn lawsuit against a pharmaceutical company constitutes fraudulent joinder under *Walton*. Defendants also contend that due to the troubling conduct of plaintiffs' counsel in alleging New Jersey citizenship, when in fact there were no New Jersey plaintiffs, defendants should be awarded the fees and costs it has incurred in this second removal. Plaintiffs posit that there is no basis for awarding fees and costs to defendants.

It is well known that removal is proper over any action that could have been

---

[4]Plaintiffs also contend that this case should be remanded because it is not clear from defendants' allegations where Hoffmann-La Roche Inc. has its principle place of business, and because it is unclear whether defendants' allegation that F. Hoffmann-La Roche, Ltd., and Roche Holding Ltd. are foreign entities is based upon personal knowledge or upon information and belief. Defendants respond by arguing that it is clear plaintiffs have alleged and relied upon the fact that Hoffmann-La Roche Inc. is a New Jersey corporation and that Judge Gilbert recognized it as such in remanding previously, and that F. Hoffmann-La Roche Ltd. and Roche Holding Ltd. are clearly diverse. In any event, plaintiff contends that those entities have never been properly served so their consent to removal is not required. As to this latter argument, the Court agrees. See *Murphy Bros., Inc. v. Michetti Pipe Strining, Inc*., 526 U.S. 344, 347-48 (1999) (holding "that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."). With regard to Hoffmann-La Roche Inc.'s principal place of business, the Court orders Hoffmann-La Roche Inc. to file an affidavit indicating its principle place of business within seven days of this order. If Hoffmann-La Roche Inc.'s principle place of business defeats complete diversity, this case will be remanded to state court.

filed originally in federal court. 28 U.S.C. § 1441; *Tylka v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000). The removal statute, 28 U.S.C. § 1441, is construed narrowly and doubts concerning removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Defendant bears the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. See *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997).

This case was removed here on the basis of diversity jurisdiction. "For good or ill, Congress has authorized the removal of cases in which the parties are of diverse citizenship and the states exceed $75,000." *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999). "When either side to such a suit prefers the federal forum, that preference prevails." *Id.*

The statute regarding diversity jurisdiction, 28 U.S.C. § 1332, requires complete diversity between parties plus an amount in controversy exceeding $75,000, exclusive of interest and costs.[5] Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted).

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight*

---

[5]It is undisputed that the amount in controversy has been met in this case.

*Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) (citing *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999)). "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal 'to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Schur*, 577 F.3d at 763 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999)).

"As many courts have noted, the term 'fraudulent joinder' is a bit of a misnomer–the doctrine requires neither fraud nor joinder." *Schur*, 577 F.3d at 763 n. 9. "Actual fraud in alleging jurisdictional facts will suffice to invoke the doctrine, but the more typical ground is that a plaintiff brought a claim against a nondiverse defendant 'that simply has no chance of success, whatever the plaintiff's motives.'" *Id.* (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). "And 'joinder' is also misleading because it is irrelevant whether a nondiverse defendant was actually 'joined' or simply named in the original complaint before the state court." *Schur*, 577 F.3d at 763 n. 9 (citing *Mayes*, 198 F.3d at 461 n. 8).

"Fraudulent joinder is difficult to establish–a defendant must demonstrate that, 'after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Schur*, 577 F.3d at 764 (quoting *Poulos*, 959 F.2d at 73). "Framed a different way, the district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (quoting *Poulos*, 959

F.2d at 73). "A defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent, [citation], and some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), [citations]." *Schur*, 577 F.3d at 764. "In conducting this analysis, a district court must turn to state law to determine whether the plaintiff has any reasonable possibility of success." *Id.*

In Illinois, the "learned intermediary" doctrine "excuses the manufacturer of a prescription drug from having to warn customers of the drug's adverse side effects; it need warn only physicians, so that armed with the warning they can make a medical decision to prescribe or not to prescribe the drug for a particular patient." *Walton*, 643 F.3d at 999-1000. "The prescribing physician is the 'learned intermediary' – the medical professional who, equipped with the knowledge imparted to him by the drug's manufacturer, determines, weighing benefit against risk, the drug's suitability for a particular patient." *Id.* at 1000. "The underlying rationale of the learned intermediary doctrine is that, with regard to prescription drugs, which are likely to be complex medicines, it is the prescribing physician who knows both the propensities of the drug and the susceptibilities of his patient, and who therefore is in the best position to prescribe a particular drug for the patient." *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 191 (Ill. 2002). But the doctrine does not just apply to manufacturers, it also applies to pharmacies when they sell prescription drugs, although the doctrine applies differently from its application to

manufacturers. *Id.* Two cases, one by the Illinois Supreme Court in *Happel* and one by the Seventh Circuit in *Walton* are illustrative of this point.

In *Happel,* the plaintiff, who was allergic to aspirin, ibuprofen, and acetaminophen, experienced a severe reaction after taking Toradol, a pain reliever prescribed by her physician. Toradol should not be taken by persons who are allergic to aspirin and other nonsteroidal anti-inflammatory drugs (NSAIDS). The plaintiff subsequently brought a negligence action against her physician and the pharmacy who filled the prescription. The plaintiff's physician settled, and the trial court granted summary judgment in favor of the pharmacy. The Illinois appellate court reversed, and the Illinois Supreme Court granted the pharmacy's petition for leave to appeal. On appeal, the Illinois Supreme Court considered "whether a pharmacy has a duty to warn about a known drug contraindication[6] where the pharmacy is aware of a customer's drug allergies and knows that the medication prescribed by the customer's physician is contraindicated for person with those allergies." *Happel*, 199 Ill. 2d at 180-81.

The Court concluded that a duty existed, finding that under the circumstances of that case, the pharmacy had a duty to warn that was encompassed within the pharmacists' duty of ordinary care. *Id.* at 188-89 (citing *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124, 126 (Ill. App. Ct. 1985)). In addressing the pharmacy's

---

[6]"The term "contraindication" is defined as "an indication, symptom, or condition that makes inadvisable a particular treatment or procedure." Webster's Third New International Dictionary 495 (1993)." *Happel*, 199 Ill. 2d at 180 n. 1.

argument that the "'learned intermediary doctrine exempts pharmacists and pharmacies from giving warnings to patients,'" the Illinois Supreme Court concluded that this case was outside the purview of the learned intermediary doctrine. *Happel*, 199 Ill. 2d at 193-94. The court provided the following rationale for its decision:

> Here, [the pharmacy] was aware not only of [the plaintiff's] drug allergies, but also that Toradol was contraindicated for persons such [the plaintiff] with allergies to aspirin. Imposing a duty to warn of this contraindication would not require the pharmacist to "learn the customer's condition and monitor his drug usage." [Citation]. On the contrary, [the pharmacy] already had the knowledge it needed in order to give an effective warning, and this warning required [the pharmacy] only to notify [the plaintiff's doctor] or [the plaintiff] of the Toradol contraindication, not to monitor [the plaintiff's] drug usage. [Footnote omitted]. Further, imposing a duty to warn here would not have intruded [the pharmacy] into the doctor-patient relationship, forcing it to "practice medicine without a license." [Citation].

*Id.* at 194. Accordingly, the Illinois Supreme Court held "that a narrow duty to warn exists where . . . a pharmacy has patient-specific information about drug allergies, and knows that the drug prescribed is contraindicated for the individual patient." *Id.* at 197.

In *Walton*, the Seventh Circuit considered whether this court was correct when it determined that the claims against the pharmacy had so little merit that the pharmacy's joinder as a defendant was fraudulent. Applying the "learned intermediary doctrine" to pharmacies, the court noted that "the doctrine's logic applies to pharmacies when they sell prescription drugs (like Yazmin), though applies differently from its application to manufacturers." *Id.* at 1000. The Court explained how the doctrine applied to pharmacies as follows:

> Pharmacies (and normally other sellers in the chain of distribution that runs from the manufacturer to the ultimate consumer) can't be expected to warn their customers of the possible defects and dangers of the prescription dugs they sell. It would be senseless, especially given drug regulation by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for he consequences of failing to investigate the safety of thousands of drugs. What a pharmacy sometimes knows, however, without investigation, and the manufacturer will not know and even a treating physician may not know, is susceptibilities of particular customers of the pharmacy to the side effects of a drug that it sells them–susceptibilities because of other drugs that the pharmacy knows the customers is taking, or a pre-existing physical or mental condition (again known to it) that makes the drug contraindicated for the customer–and then it must warn either the customer or his physician. [Citations]. But not otherwise.

*Id.* at 1000. Thus, the Seventh Circuit concluded "that in 48 states including Illinois a manufacturer or a pharmacy must warn a customer of dangers known to it of which physicians have not been warned, but not of dangers of which physicians have been warned." *Id.* "So if [the pharmacy] knew that the plaintiff was abnormally suspectible to a particular side of effect of Yazmin, it had a duty to warn her or her physician." *Id.* "But she doesn't allege that the pharmacy knew anything about her suspectibility, and so it had the full protection of the learned-intermediary doctrine." *Id.* at 1000-01. "So clear is this that the district court was right to invoke the fraudulent joinder as a ground for dismissing [the pharmacy] from the case, with prejudice, leaving only diverse defendants." *Id.* at 1001.

Here, plaintiffs brought two counts against Walgreens: 1) "strict products liability/sale of defective product" and 2) "negligence/failure to warn." Walgreens alleged the following with regard to any susceptibilities that Wagreens may have been aware with regard to its customers:

> Walgreens knew or should have known about the respective health
> conditions of the [p]laintiffs that they sold Accutane to based on their
> health histories and records of other prescriptions that are in
> Walgreens' possession. Walgreens provided warnings along with
> Accutane that contained inaccurate information in that these
> warnings failed to warn that Accutane had serious side effects,
> including inflammatory bowel disease, Crohn's disease and ulcerative
> colitis, and these are side effects that the Walgreens knew or should
> have know of, and that [p]laintiffs should have been counseled
> regarding the serious side effects of Accutane.

Despite plaintiffs' arguments to the contrary, the Court finds that this is the *Walton* case all over again. Plaintiffs allege that the manufacturing defendants and Walgreens did not provide adequate warnings; they do not allege that Walgreens had specific knowledge of each individual plaintiffs' susceptibility to the adverse side effects of Accutane. Clearly it is possible to allege for each plaintiff individually his or her medical susceptibility and how Walgreens knew of that condition. While this may seem like a daunting task with so many plaintiffs in one complaint, it is perhaps not as daunting as preparing a different complaint for each plaintiff or paying a filing fee for each plaintiff. Nonetheless, this is what *Walton* requires, and the allegations in this case come no where near the situation in *Happel* where the Illinois Supreme Court found a narrow duty existed. Accordingly, the motion to remand is denied. Walgreens is dismissed from this case with prejudice. No fees and costs will be awarded.

### III. Conclusion

For the reasons stated above, plaintiff's motion to remand (Doc. 6) is denied, Walgreens is dismissed with prejudice, no fees and costs are awarded,

and Hoffmann-La Roche Inc. is ordered to file an affidavit indicating its principle place of business within seven days of this order.

**IT IS SO ORDERED.**

**Signed this 23nd day of May 2012.**

Digitally signed by David R. Herndon
Date: 2012.05.23 14:25:42 -05'00'

**Chief Judge
United States District Court**